| | | |
|---|---|---|
| STATE OF WYOMING | ) | IN THE DISTRICT COURT |
| | ) | |
| COUNTY OF SWEETWATER | ) | THIRD JUDICIAL DISTRICT |

Civil Action No.: C-16 - _378_ - _L_

| | | |
|---|---|---|
| SETH BEECH and KIMBERLY BEECH, individually, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| FORD MOTOR COMPANY, a Delaware Corporation, and S & J FORD OF ROCK SPRINGS, LLC, a Wyoming Limited Liability Company, | § § § § | **FILED** DISTRICT COURT THIRD JUDICIAL DISTRICT SWEETWATER COUNTY WY **MAY 2 5 2016** |
| Defendants. | § § § | DONNA LEE BOBAK CLERK OF COURT BY_____ DEPUTY CLERK |

## <u>COMPLAINT</u>

COME NOW, the Plaintiffs, SETH BEECH and KIMBERLY BEECH, by and through their attorney, Jack D. Edwards, and for their Complaint against the Defendants, state and allege as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. This is an action for damages for personal injury, and the amount in controversy exceeds $75,000.00, exclusive of interest, attorneys' fees, and costs.

2. At the time of the incident that is the subject of this complaint, SETH BEECH and KIMBERLY BEECH were residents of Wyoming, and they are currently residents of North Carolina.

3. Defendant FORD MOTOR COMPANY ("FORD") is a Delaware corporation doing business in the State of Wyoming with its principal place of business in Dearborn,

1

Michigan.

4.    FORD has been at all times material herein engaged in the business of manufacturing and selling motor vehicles throughout the United States, including in Wyoming. FORD was and is in the business of, among other things, designing, developing, testing, manufacturing, and distributing motor vehicles in the United States, including the F550 that is the subject of the complaint, and in that capacity operated, conducted, engaged in and carried on business and business ventures within the State of Wyoming, directly and indirectly, through dealerships, brokers or distributors within Wyoming and intended that its motor vehicles be sold within the State of Wyoming, and derived substantial revenue from the sale of its motor vehicles to Wyoming residents in the ordinary course of commerce, trade or use, and this action arises out of such business. FORD is registered with the State of Wyoming and is therefore subject to service or process within this state. FORD has designated C T Corporation System at 1908 Thomes Ave., Cheyenne, Wyoming 82001, as its agent for service of process within the State of Wyoming. Defendant FORD's motor vehicle contacts with, or activities in, Wyoming are systematic and continuous and, thus, are sufficient to confer jurisdiction over the Defendant.

5.    Defendant S & J FORD OF ROCK SPRINGS, LLC ("S & J"), is a Wyoming limited liability company and, as such, is a resident of the State of Wyoming and was transacting business in the State of Wyoming and was engaged in the business of marketing, selling and servicing in Wyoming various Ford motor vehicles, including the Ford F550 that is the subject of this complaint. Defendant has its principal place of business in Rock Springs, Wyoming, and can be served with process through its registered agent, Nicholas Griffin, 1264 Dewar Dr., Rock Springs, Wyoming 82901.

6.   This case involves the rollover occupant protection system ("ROPS") of a 2012 F550 Super Duty bearing VIN 1FD0Z5HT0CEA61135 ("the F550") that rolled over.

7.   The ROPS consists of (1) the roof structure; (2) the seat belt restraint; (3) the side curtain air bag; and (4) the vehicle's glazing, including all components of these devices.

8.   The ROPS of the F550 was designed by FORD.

9.   The ROPS of the F550 was manufactured by FORD.

10.   The ROPS of the F550 was assembled by FORD.

11.   The F550 was marketed by Ford and S & J at its dealership known by and doing business as First Choice Ford.

12.   The F550 was sold by Ford and S & J.

13.   The purpose of performing dynamic rollover testing is to determine if a vehicle's ROPS will maintain survival space and contain the occupant within the vehicle's safety cell.

14.   Maintaining survival space helps prevent and/or minimize injuries.

15.   FORD should have conducted dynamic testing of the F550 to ensure that the vehicle was safe in rollover crashes even though such testing is not mandated by the Federal Government.

16.   The Federal Motor Vehicle Safety Standards ("FMVSS") are regulations written in terms of minimum safety performance requirements for motor vehicles or motor vehicle equipment.

17.   Exceeding Federal Standards is desirable when it enhances the safety of motor vehicle occupants.

18.   Federal Standards do not require dynamic rollover testing.

3

19. There was no minimum Federal Standard that applied to the roof crush resistance of the F550.

20. FORD knew that federally mandated testing has a limited relationship to vehicle performance in real world rollovers.

21. In fact, FORD conducted dynamic testing on its vehicles many years before the F550 was designed and built.

22. The F550 is unreasonably dangerous in rollover crashes, in part, because it does not have a strong roof that can withstand the weight of the vehicle as it rolls.

23. The F550 is unreasonably dangerous in rollover crashes, in part, because its seat belt restraints do not adequately couple occupants to their seats as it rolls.

24. During its years of developing, designing, manufacturing, marketing, and selling vehicles, FORD knew of the importance of a strong roof structure in its vehicles.

25. FORD knew that occupant injury in rollover accidents is highly correlated with survival space reduction.

26. FORD knew that roof support structure failure increases the likelihood of injury.

27. FORD knew that injuries in rollovers can be avoided if the roof structure maintains the integrity of the occupant survival space and the seat belt restraints couple occupants to their seats.

28. FORD failed to design and manufacture the ROPS of the F550 so that it would be reasonably safe in a foreseeable rollover crash.

29. FORD knew about crashworthiness.

30. Crashworthiness is the science of minimizing the risk of serious injury and fatality in motor vehicle collisions through the use of safety systems.

31.  There are five basic crashworthiness principles: (1) maintain occupant survival space, (2) manage the collision energy, (3) restrain the occupant, (4) prevent ejection, (5) prevent fuel-fed fires.

32.  Crashworthiness requires that an auto manufacturer design its vehicles in such a way that when a crash occurs, injuries to the people inside the vehicle are minimized to the extent practical.

33.  Because the ROPS of the F550 included a roof that was weak and dangerous, the ROPS of the F550 was uncrashworthy.

34.  Because the ROPS of the F550 included seat belt restraints did not couple occupants to their seats in a rollover, the ROPS of the F550 was uncrashworthy.

35.  When a vehicle's ROPS is not crashworthy, it means that people suffer injuries in rollover that could have been prevented.

36.  SETH BEECH was injured on July 4, 2012, when he was the right front passenger in the F550 that rolled over on Highway 1804.

37.  SETH BEECH was wearing his seat belt.

38.  The rollover crash was of the type that is foreseeable to Defendant FORD.

39.  During the rollover, the F550's roof structure collapsed over SETH BEECH and was contacted by Plaintiff's head.

40.  SETH BEECH's seat belts were ineffective in coupling him to his seat cushion and seat back in a manner that would have prevented or minimized contact with the collapsing roof structure.

41.  Plaintiff SETH BEECH sustained serious injuries, including facial fractures and a head injury, in the rollover.

## COUNT I
### Negligence Against FORD

42. Plaintiffs reallege paragraphs 1 through 41.

43. Defendant FORD designed, manufactured, assembled, distributed and sold vehicles, including the F550 with its defective ROPS.

44. The injuries and damages suffered by Plaintiffs were proximately caused by the negligence of Defendants FORD and S & J in designing, manufacturing, assembling, testing, marketing and selling a vehicle with an ROPS that does not provide adequate rollover occupant protection.

45. Defendant FORD knew, or in the exercise of due care should have known, that the unreasonably dangerous condition of the F550's ROPS would create a foreseeable and unreasonable risk of harm to uses, including Plaintiff SETH BEECH.

46. FORD was under a duty to properly and adequately design, manufacture, assemble, test, provide adequate warnings for, distribute and sell the F550 with an ROPS in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly under ordinary circumstances would use the vehicle.

47. Defendant FORD breached its duty of reasonable care owed to Plaintiff SETH BEECH by being negligent in one or more of the ways described below.

48. Defendant FORD was negligent in designing the ROPS of the F550 with inadequate roof strength.

49. Defendant FORD was negligent in designing the ROPS of the F550 with seat belt restraints that do not couple occupants to their seats in foreseeable rollover crashes.

50. Defendant FORD was negligent in selling the F550 with a defective ROPS, and without proper warnings.

51. Defendant FORD was negligent in choosing to design the ROPS of the F550 without a sufficiently strong roof even though it was aware of vehicle designs and testing which revealed the clear benefits of roofs with sufficient strength to prevent compromise of the "survival space" or "safety cage" around an occupant.

52. Defendant FORD was negligent in failing to adopt state-of-the-art technology to provide occupants and consumers with proper protection.

53. Defendant FORD was negligent in choosing to disregard and ignore its obligation to hold the safety of the public paramount.

54. Defendant FORD was negligent in choosing to disregard and ignore generally accepted principles of hazard control ("design, guard and warn").

55. Defendant FORD had a duty to warn users about the potential for harm arising out of the use of the F550, and FORD was negligent in failing to warn about the inherent dangers in the ROPS of the F550.

56. Because of Defendant FORD's negligence, consumers and users were denied important and material information that should have been fully disclosed.

## COUNT II
### Strict Liability Against FORD and S & J

57. Plaintiffs reallege paragraphs 1 through 56.

58. Defendant FORD was engaged in the business of designing, manufacturing, assembling, marketing and selling motor vehicles to the public, including the F550.

59. Defendant S & J performed dealer preparations for vehicles, including the F550, which it then marketed and sold.

60. Defendant FORD placed the F550 on the market with knowledge that it may be involved in crashes, including rollovers, in which it would prove not to be crashworthy.

61. Defendants FORD and S & J knew, or should have known, that ultimate users or consumers would not be able to detect the defects and dangerous conditions of the vehicle's ROPS.

62. The F550 with its ROPS was defective and unreasonably dangerous to ultimate users because of design and manufacturing defects that caused the vehicle and its ROPS to perform inadequately and in an uncrashworthy manner in the rollover event of July 4, 2012.

63. FORD and S & J are, therefore, strictly liable to Plaintiffs under applicable products liability law without regard to or proof of negligence or gross negligence, although Plaintiffs would also show that the F550 was negligently designed, manufactured, assembled, marketed, and sold with an ROPS that was in a defective condition.

64. The ROPS and the F550 were improperly and inadequately tested by Defendant FORD.

65. The ROPS of the F550 is defective in that the vehicle's roof structure was weak and did not maintain its integrity and preserve occupant survival space in the event of a rollover crash.

66. The ROPS of the F550 is defective in that the seat belt restraints it included failed to couple occupants to their seats, thereby providing appropriate occupant restraint and protection in the event of a rollover crash.

67. The unreasonably dangerous nature of the defects in the ROPS of the F550 as outlined above creates a high probability that when the F550 is involved in rollover crashes, severe and permanent personal injuries will result.

68. Defendants FORD and S & J knew of this probability prior to production and marketing of the vehicle, but Defendants willfully and wantonly manufactured and/or marketed and sold the vehicle with the defects.

## COUNT III
## Negligence Against S & J

69. Plaintiffs reallege paragraphs 1 through 68.

70. Defendant S & J performed dealer preparations for vehicles, including the F550, before selling them, and charged for those services.

71. As a franchise automobile dealer which negligently sold the defective F550, S & J is liable for injuries and damages caused by the product.

72. Defendant S & J Spikes is independently liable for its employees' misrepresentations concerning the F550. These misrepresentations occurred within the course, purpose and scope of their employment and/or agency, and with the authority, consent, approval and ratification of Defendant S & J.

73. At the time the F550 was sold by S & J, the vehicle's ROPS contained one or more defects, which defects permitted injuries to Plaintiff SETH BEECH.

74. The F550's ROPS was defective because it was not crashworthy; its roof was weak and collapses in rollovers; and the seat belts do not couple an occupant to his seat cushion and seat back in rollover events.

75. Defendant S & J had actual knowledge of these defects at the time it sold the F550.

76. Defendant S & J negligently failed to adequately and reasonably warn users of the F550 about the defects in its ROPS which rendered it inappropriate and unsafe for its intended use.

77. Defendant S & J represented that the F550 was safe and crashworthy when it was not.

78. There was a complete failure by Defendant S & J to provide any warnings regarding the F550's lack of crashworthiness in a rollover crash, which risk was known or by the application of reasonably developed human skill and foresight should have been known to

9

S & J.

79.    Plaintiffs allege that Defendant S & J committed acts of omission and commission in selling the F550 without warning of potentially dangerous aspects of the vehicle, including its lack of rollover crashworthiness.

## COUNT IV
## DAMAGES SUFFERED BY PLAINTIFFS

80.    Plaintiffs reallege paragraphs 1 through 79 above.

81.    As a direct and proximate result of the foregoing negligence and defects, Plaintiff SETH BEECH sustained bodily injury and resulting pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care, treatment, rehabilitation and loss of ability to earn money. The injuries to SETH BEECH are permanent within a reasonable degree of medical probability, and SETH BEECH has suffered these injuries in the past, from the date of the accident, and will continue to sustain such injuries in the future.

82.    Because of the severity of the injuries sustained by her husband, SETH BEECH, Plaintiff KIMBERLY BEECH has suffered a loss of consortium and all factors considered therein by law as result of those injuries as directly and proximately caused by the foregoing negligence and defects, and has personally suffered a loss of the services that would have been performed by SETH BEECH, for which she seeks and is entitled to recover compensation.

WHEREFORE, Plaintiffs demand judgment for damages against all Defendants, together with the costs of suit incurred in the trial and appellate courts, pre-judgment interest on all economic damages, and such other relief as the Court deems appropriate.

DATED this 19 day of May, 2016.

JACK D. EDWARDS   WSB No. 6-3877
EDWARDS LAW OFFICE, P.C.
P.O. Box 5345
Etna, WY 83118-5345
Telephone:    307-883-2222
Facsimile:    307-222-0561
Email:        jedwards@silverstar.com

and

ROBERT E. AMMONS
(*pro hac vice* application to be submitted)
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:    713-523-1606
Facsimile:    713-523-4159
Email:        rob@ammonslaw.com
Email:        darladunn@ammonslaw.com

ATTORNEYS FOR PLAINTIFFS